## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD R. CONKLIN IV, | : | No. 3:24-CV-0189 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| JOHN DOE, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Donald R. Conklin IV initiated the above-captioned *pro se* action under 42 U.S.C. § 1983,[1] alleging constitutional violations by prison officials at Carbon County Correctional Facility, located in Nesquehoning, Pennsylvania. The court screened and dismissed Conklin's initial complaint pursuant to 28 U.S.C. § 1915A but granted him leave to amend.  Presently before the court for Section 1915A screening is Conklin's amended complaint.  Because Conklin again fails to state a claim upon which relief may be granted, the court will dismiss his amended complaint with prejudice.

## I.    BACKGROUND

Conklin currently resides in Hazelton, Pennsylvania.  (See Doc. 13).  When he filed the instant lawsuit, he was being held in pretrial detention at Carbon

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

County Correctional Facility (CCCF).  (See Doc. 1 at 2; Doc. 19 ¶ 2).  In his initial complaint, Conklin attempted to sue an unidentified prison official and CCCF itself for two unrelated constitutional violations that allegedly occurred in 2023.  (See generally Doc. 1).  Conklin alleged that he was forced to wear handcuffs and shackles during his exercise periods in violation of the Eighth Amendment.  (Id. at 4, 5).  In an unrelated incident, Conklin alleged that prison officials violated the Fourteenth Amendment when he was "denied due process" and punished with the loss of telephone privileges before the adjudication of a pending misconduct.  (Id.)

The court screened Conklin's complaint pursuant to 28 U.S.C. § 1915A(a) and dismissed it for failure to state a claim upon which relief may be granted. (See Doc. 17 at 5-12).  The court first found that Conklin had failed to allege personal involvement by any Defendant in the claimed constitutional misconduct. (Id. at 6-7).  It further noted that CCCF had already been dismissed from this action.  (Id. at 7 (citing Doc. 8)).  Next, the court explained that Conklin's "Eighth Amendment" conditions-of-confinement claim, which was actually a Fourteenth Amendment claim because Conklin alleges that he was a pretrial detainee while at CCCF, failed because he had not alleged deliberate indifference by any Defendant.  (Id. at 7-9).  The court then reviewed and dismissed Conklin's

Fourteenth Amendment procedural due process claim, finding that he had failed to identify a protected liberty interest.  (Id. at 9-10).

The court granted Conklin limited leave to amend and provided detailed pleading instructions.  (Id. at 10-12).  Specifically, the court dismissed Conklin's procedural due process claim with prejudice, noting that he had not and could not state such a claim due to the absence of an atypical and significant hardship. (Id. at 10-11).  It then granted him leave to amend his conditions-of-confinement claim and stressed that he must identify appropriate defendants and plausibly plead personal involvement in a constitutional violation.  (Id. at 11).

Conklin timely filed an amended complaint.  (Doc. 19).  This pleading, however, suffers from numerous fatal deficiencies as well.

## II.    STANDARD OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," unrepresented prisoner complaints targeting governmental entities, officers, or employees. See 28 U.S.C. § 1915A(a).  One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"  Id. § 1915A(b)(1).  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to screening a pro se prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).  See Grayson v.

3

Mayview State Hosp., 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); O'Brien v.

U.S. Fed. Gov't, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (*per curiam*)

(nonprecedential); cf. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000).

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire

"whether a plaintiff will ultimately prevail but whether the claimant is entitled to

offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236

(1974); see Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). The court must

accept as true the factual allegations in the complaint and draw all reasonable

inferences from them in the light most favorable to the plaintiff. See Phillips v.

Cnty. of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008). In addition to the facts

alleged on the face of the complaint, the court may also consider "exhibits

attached to the complaint, matters of public record, as well as undisputedly

authentic documents" attached to a defendant's motion to dismiss if the plaintiff's

claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230

(3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998

F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a

three-step inquiry. See Connelly v. Lane Constr. Corp., 809 F.3d 780, 787 (3d

Cir. 2016) (internal citations, quotation marks, and footnote omitted). At step

one, the court must "tak[e] note of the elements [the] plaintiff must plead to state

a claim." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (alterations in original)).  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.  Id. (quoting Iqbal, 556 U.S. at 679).  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679).  Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 681.

Because Conklin proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

## III.    DISCUSSION

In his amended complaint, Conklin appears to be attempting to assert a Fourteenth Amendment conditions-of-confinement claim based on an allegedly unconstitutional policy.  He claims that CCCF policy mandates that inmates held in the Restricted Housing Unit (RHU) must wear handcuffs and shackles when outside their cells, including during exercise periods.  (Doc. 19 ¶ 10).  Conklin alleges that this policy leads to a "lack of access to safe and practical exercise."

5

(Id. ¶ 11).  He sues the following Defendants: an unspecified John Doe party,

Warden James Youngkin, Deputy Warden Derek George, the Carbon County

Prison Board, the Carbon County Commissioner's Office, and "Correctional

Officers assigned the Restricted Housing Unit."  (Id. ¶¶ 4-9).  He seeks

declaratory and injunctive relief, as well as compensatory and punitive damages.

(Id. at pp. 6-7).

Conklin, however, fails to state a claim upon which relief may be granted.

The court will explain his pleading deficiencies in turn.

### A.    Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be

"predicated solely on the operation of *respondeat superior*."  Rode v.

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); see also

Ashcroft v. Iqbal, 556. U.S. 662, 676 (2009) (affirming same principle in Bivens

context).  Rather, a Section 1983 plaintiff must plausibly plead facts that

demonstrate the defendant's "personal involvement in the alleged misconduct."

Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020).  Personal involvement can

include direct wrongful conduct by a defendant, but it can also be demonstrated

through evidence of "personal direction" or "actual knowledge and

acquiescence"; however, such averments must be made with particularity.  Id.

(quoting Rode, 845 F.2d at 1207).  Furthermore, it is equally settled that

involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.  See id. (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); Lewis v. Wetzel, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

Conklin's only allegation against Deputy Warden Derek George is that George did not respond to a grievance appeal.  (Doc. 19 ¶ 14).  This type of allegation regarding involvement in the grievance process alone is insufficient to plead personal involvement for Section 1983 liability.  See Dooley, 957 F.3d at 374; see also Bakhtiari v. Madrigal, 841 F. App'x 457, 460 (3d Cir. 2021) (nonprecedential) (noting that providing a grievance response is insufficient to constitute personal involvement).

Conklin also attempts to sue every corrections officer in the RHU for enforcing the purportedly unconstitutional policy, but he has not alleged what any corrections officer did or did not do.  Such a blanket, general assertion against

multiple prison officials is insufficient to plausibly allege personal involvement in unconstitutional conduct. The court, therefore, must dismiss the Fourteenth Amendment claims against Deputy Warden George and the unidentified RHU corrections officers for lack of personal involvement.

### B.    Fourteenth Amendment Conditions-of-Confinement Claim

Conklin contends that the policy of having RHU inmates handcuffed and shackled when outside their cells for exercise creates unconstitutional conditions of confinement and thus violates the Fourteenth Amendment. Liberally construed, he appears to be asserting a claim that Defendants "with deliberate indifference to the consequences, established and maintained a policy . . . which directly caused [him] constitutional harm." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)). The first step in analyzing such a claim is to determine whether the policy—as alleged—is violative of the constitution.

When a pretrial detainee asserts a conditions-of-confinement claim, the Due Process Clause of the Fourteenth Amendment requires courts to consider "first, whether any legitimate purposes are served by the[] conditions, and second, whether the[] conditions are rationally related to these purposes." See Hubbard v. Taylor, 538 F.3d 229, 232 (3d Cir. 2008) (Hubbard II) (quoting Union

Cnty. Jail Inmates v. Di Buono, 713 F.2d 984, 992 (3d Cir. 1983)).  If pretrial detainees are subjected to conditions that are not reasonably related to a legitimate governmental objective, an inference may be made that the purpose of the prison official's action is punishment.  Hope v. Warden York Cnty. Prison, 972 F.3d 310, 326 (3d Cir. 2020).  Thus, "a particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose."  Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007) (quoting Rapier v. Harris, 172 F.3d 999, 1005 (7th Cir. 1999)).

As the Third Circuit instructs, courts confronted with a Fourteenth Amendment conditions-of-confinement claim must "consider the totality of the circumstances of confinement."  Hope, 972 F.3d at 326 (citing Hubbard I, 399 F.3d at 159-60).  And, like an Eighth Amendment conditions-of-confinement claim asserted by a convicted prisoner, a Fourteenth Amendment conditions-of-confinement claim by a pretrial detainee requires a showing of deliberate indifference on the part of prison officials.  Edwards v. Northampton Cnty., 663 F. App'x 132, 135 (3d Cir. 2016) (nonprecedential) (citing Colburn v. Upper Darby Twp., 946 F.2d 1017, 1024 (3d Cir. 1991)).

Conklin's amended complaint fails to plausibly allege a constitutional violation. His undeveloped pleading asserts, in conclusory fashion, that the policy of keeping RHU inmates restrained during exercise is a per se violation of the Fourteenth Amendment. Yet Conklin's own allegations reflect a clear "legitimate governmental purpose" for this restraint: the affected inmates or detainees are those who are held in CCCF's restricted housing unit and subject to either administrative or disciplinary custody. See Shoats v. Horn, 213 F.3d 140, 142 (3d Cir. 2000) ("Inmates in disciplinary and administrative custody are confined in Restricted Housing Units (RHU)."); 37 PA. CODE § 95.238(3) (setting forth recreation requirements for county jails and noting that segregation of inmates based on "appropriate security criteria" is permitted); id. § 95.238(4) (providing that inmates "under disciplinary status or segregation" may receive less recreation time than other prisoners).

Conklin fails to allege that the prison has no legitimate penological reason for the at-issue exercise policy or that this policy is arbitrary or purposeless and therefore unlawful punishment. That is likely because the policy—which reasonably treats RHU inmates as a greater security risk than other inmates—is purposeful on its face. "Ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both." Bell v. Wolfish, 441 U.S. 520, 539 (1979).

Nor does Conklin allege that the restriction is excessive under the circumstances. Rather, Conklin simply posits, in conclusory fashion, that the policy "amounted to deliberate indifference [by] denying [his] protected interests of life and liberty in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution." (Doc. 19 ¶¶ 17, 18). This allegation, however, is a mere "legal conclusion," which may be disregarded. Connelly, 809 F.3d at 787. Consequently, Conklin's pleading deficiencies undermine his conditions-of-confinement claim. See Contant v. Sabol, 431 F. App'x 177, 178-79 (3d Cir. 2011) (nonprecedential) (finding that detainee-plaintiff fell short of alleging Fourteenth Amendment conditions-of-confinement claim because he had "fail[ed] to allege that the defendants had an express intent to punish him, that placement in the RHU was excessive under the circumstances, or that the defendants were not acting to ensure institutional security" (citation omitted)); Ali v. Carney, No. 20-CV-4320, 2020 WL 7335466, at *6-7 (E.D. Pa. Dec. 14, 2020) (holding that RHU-housed pretrial detainee's allegation of being shackled during recreation failed to state Fourteenth Amendment deprivation, as detainee failed to "allege that Defendants had an express intent to punish him," that the restriction "was not rationally related to a legitimate non-punitive government purpose," or that "the restriction was excessive in light of that purpose").

Conklin's amended complaint suffers from numerous other problems. For example, he seeks compensatory damages but never asserts that he suffered a physical injury. See 42 U.S.C. § 1997e(e). He also seeks declaratory and injunctive relief but is no longer incarcerated at CCCF (or any other prison). See Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."); see also Abdul-Akbar v. Watson, 4 F.3d 195, 197 (3d Cir. 1993). Additionally, Conklin sues entities—the Carbon County Prison Board and the Carbon County Commissioner's Office—that are not "persons" and thus are not subject to Section 1983 liability. See Rehberg v. Paulk, 566 U.S. 356, 361 (2012) (citing Imbler v. Pachtman, 424 U.S. 409, 417 (1976) (citing 42 U.S.C. § 1983)).

These shortcomings, however, are secondary to Conklin's fundamental pleading deficiency, which is that he fails to plausibly allege that the conditions at CCCF amounted to punishment and thus violated the Fourteenth Amendment. See Bell, 441 U.S. at 535. Conklin's amended complaint, therefore, must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

## C.    Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless

12

amendment would be inequitable or futile." <u>Grayson</u>, 293 F.3d at 114.  However, here, leave to amend will be denied, as Conklin has failed to plausibly plead a claim for relief even after "amendments previously allowed." <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Jones v. Unknown D.O.C. Bus Driver & Transp. Crew</u>, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that, where inmate plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile").

## IV.    CONCLUSION

Based on the foregoing, the court will dismiss with prejudice Conklin's amended complaint pursuant to 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.  An appropriate Order follows.

Date: _10/22/24_

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

13